# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

SAMUEL E.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,[2]

    Defendant.

Case No. 5:18-cv-02609-AFM

**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, Commissioner of the Social Security Administration, is substituted as the proper defendant in this action. *See* Fed. R. Civ. P. 25(d).

# BACKGROUND

In October 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning September 24, 2012. Plaintiff's applications were denied initially and upon reconsideration. (Administrative Record ["AR"] 139-143, 150-154.) A hearing took place on April 8, 2015 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 64-94.) In a decision dated May 29, 2015, the ALJ found that Plaintiff suffered from the severe impairments of cervical degenerative disc disease and hypertension. (AR 54.) The ALJ determined that Plaintiff's residual functional capacity ("RFC") included the ability to perform a range of medium work as follows: Plaintiff can lift and/or carry 50 pounds occasionally and up to 25 pounds frequently; can stand and/or walk for at least six hours in an eight-hour workday; can sit for at least six hours in an eight-hour workday; can frequently climb, balance, kneel, crouch, or crawl; and is limited to occasional use of ladders, ropes, and scaffolds. (AR 55.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform his past relevant work. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 58-59.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 43-48), rendering the ALJ's decision the final decision of the Commissioner.

# DISPUTED ISSUES[3]

1. Whether the ALJ properly assessed Plaintiff's RFC.
2. Whether the ALJ properly rejected Plaintiff's subjective complaints.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v.*

---

[3] As discussed below, the legal basis for Plaintiff's claims are difficult to discern. The Court has liberally construed Plaintiff's allegations to raise the following issues.

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Medical Record

Plaintiff alleged disability due to neck pain resulting from a neck injury he sustained in September 2012. (AR 260.) The ALJ summarized the relevant medical record, stating that the "objective diagnostic records revealed a moderate musculoskeletal pathology at most." (AR 56.) The ALJ discussed the MRI studies of Plaintiff's cervical spine, which showed a mild-to-moderate degenerative disc disease. The ALJ observed that the most significant finding was severe right neural foraminal stenosis at C6-C7. However, the studies revealed no impingement of the spinal cord at any level. (AR 56-57, citing AR 538, 539-542.) The ALJ also noted a positive EMG/NCS study of Plaintiff's right upper extremity, which was consistent with right C7 radiculopathy, and indicated mild, asymptomatic, neuropathy at the wrist. (AR 57, citing AR 324.) Physical examinations in 2013 revealed mild positive findings of tenderness to palpation at the right lumbar paraspinal musculature and spasm, but no neurological deficits. (AR 57, citing AR 328, 333.)

In January 2014, Plaintiff underwent a consultative orthopedic examination by Herman Schoene, M.D. Dr. Schoene reviewed MRIs of Plaintiff's cervical spine and performed a physical examination. He reported Plaintiff's blood pressure was

elevated to 160/90. Plaintiff's posture and gait were normal, and he ambulated without difficulty and without the use of an assistive device. Plaintiff's neck range of motion was mildly diminished with a positive Spurling test. Plaintiff exhibited normal range of motion in his shoulders as well as his upper and lower extremities. Plaintiff retained full motor strength. Plaintiff's sensation was intact throughout. X-ray imaging performed on that date showed anterior osteophyte formation and narrowed disc spaces at C5-C6 and C6-C7. In Dr. Schoene's opinion, Plaintiff could perform a full range of medium work with no postural restrictions. (AR 418-422.)

The ALJ observed that treatment notes in 2014 indicate that Plaintiff remained on narcotic pain medication for his neck pain. He noted the absence of evidence suggesting that Plaintiff had been referred for surgery or for epidural steroid injections. (AR 57, citing AR 573-580.) Instead, Plaintiff reported that his medication was effective in relieving his pain. (AR 57, citing AR 322.)

The ALJ discussed the opinions of the State agency medical consultants, observing that they were generally consistent with Dr. Schoene's opinion. (AR 57-58, citing AR 95-105, 106-115.) Unlike Dr. Schoene, however, the State agency medical consultants precluded Plaintiff from more than occasional use of the upper extremities for pushing and pulling and limited Plaintiff to frequent postural activities and occasional use of ladders, ropes and scaffolds. (AR 58.) The ALJ found Dr. Schoene's opinion failed to fully account for Plaintiff's subjective complaints of pain. On the other hand, the ALJ found the State agency consultants' limitations on the upper extremities were overly restrictive considering Plaintiff's activities of daily living, intact neurological examinations, and lack of significant treatment for his alleged symptoms. (AR 58.) Consequently, the ALJ assessed the RFC outlined above.[4]

---

[4] Even liberally construed, Plaintiff's allegations do not challenge the ALJ's assignment of weight to the medical opinions. Moreover, the Court's review supports the conclusion that the ALJ did not commit error in rejecting portions of these non-examining physicians' opinions. *See Sousa v.*

4

With regard to Plaintiff's elevated blood pressure, the ALJ noted that there was no evidence of any end organ damage, history of stroke, cardiovascular disease, or functional limitations related to Plaintiff's blood pressure. (AR 57, citing AR 573-580, 581-587.) Thus, the ALJ concluded the condition "should be amenable to proper control by adherence to recommended medical management and medication compliance." (AR 57.)

## II. The ALJ's RFC Assessment

To begin, the Court notes the legal and factual bases for Plaintiff's arguments are difficult to discern. Many of Plaintiff's allegations do not directly address the ALJ's decision. For example, Plaintiff complains that he began losing his teeth in 2007 after eating his lunch, which he believes had been "tampered with." (ECF No. 18 at 2.) Plaintiff points out that his dentist diagnosed Plaintiff with chronic periodontal disease, a condition Plaintiff also blames on the toxin in his lunch in 2007. He submits dental records in support of this assertion. (ECF No. 18 at 2-3, 11.) Plaintiff contends that he requires an order to have his "skeletal tissue" examined by a toxicologist in order to find the root cause of his illness. (ECF No. 18 at 5-6.) Plaintiff alleges that doctors at Kaiser Permanente are biased and have minimized the severity of his condition and further alleges that the medical records have been altered. (ECF No. 18 at 7-10; ECF No. 23 at 2-3.) In addition, Plaintiff states that a week after the hearing he was diagnosed with a condition that leads to dizziness and tinnitus which are "enough disabling illnesses to qualify [him] for social security disability benefits...." (ECF No. 18 at 2-3.)

Such allegations are not within the scope of this Court's review. Rather, the Court has jurisdiction to review the final decision of the Commissioner, and that review is limited to the administrative record. *See Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000) ("judicial review in cases under the Social Security Act is

---

*Callahan,* 143 F.3d 1240, 1244 (9th Cir. 1998) (ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record").

limited to a review of the administrative record for a determination of whether the Commissioner's decision is supported by substantial evidence in the record."); *London v. Colvin*, 2014 WL 12557986, at *7 (C.D. Cal. Dec. 29, 2014) (the Court lacks jurisdiction to reverse the Commissioner's decision based on evidence that is not part of the administrative record).

Liberally construing Plaintiff's allegations as a challenge of the ALJ's RFC assessment, such a challenge lacks merit.

The ALJ is responsible for determining a claimant's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). Here, the ALJ considered all of the medical evidence submitted by Plaintiff as well as the medical opinions. The ALJ concluded that the objective clinical evidence – namely, MRI studies, x-rays, and physical examination findings – revealed a relatively mild cervical impairment. (AR 56-57.)

The ALJ's conclusion is supported by substantial evidence. For example, the record includes a December 2008 MRI showing mild foraminal narrowing but no significant stenosis. (AR 445.) An August 2012 x-ray indicated straightening of the cervical lordosis with degenerative changes at C6-C7. (AR 409-410.) Similarly, a September 2012 MRI revealed moderate degenerative process, with only mild foraminal stenosis. (AR 485-486.) A December 2013 MRI reported mild to moderate degenerative disc and facet disease of the cervical spine. (AR 411-412.) A January 2014 MRI revealed severe right foraminal stenosis at C6-C7 (AR 438), another MRI in August 2014 showed only mild to moderate stenosis. (AR 706-708.) In December 2014, Vikas Mehta, M.D., performed a neurosurgical consultation. Dr. Mehta reviewed the MRIs and performed a physical examination. He concluded that Plaintiff had mild to moderate stenosis, but found no evidence of spinal cord injury and noted the neurological exam was intact. Dr. Mehta did not recommend surgical intervention. (AR 884-889.) The ALJ also accurately characterized Plaintiff's 2013

treatment for his neck impairment. The treatment notes confirm minimal findings on examination for which Plaintiff was prescribed medication and advised to apply a heating pad. (*See, e.g.*, AR 324-325, 326-328, 332-334, 343-345, 348-350, 358-360, 364-365, 375-377, 381-383, 427-429.) Likewise, Plaintiff's medical records from 2014 and 2015 reveal mild positive findings – i.e., a mild reduction in cervical range of motion and tenderness. (AR 420, 603-604, 640-641, 888, 1032-1033, 1093, 1141, 1278, 1287, 1382, 1450, 1497.)

At most, Plaintiff's argument amounts to a disagreement as to how the evidence should be interpreted. However, so long as the ALJ's interpretation of the record is rational and supported by substantial evidence, which it is here, the Court may not disturb it. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld"); *see generally Biestek v. Berryhill*, 139 S. Ct. 1149, 1154 (2019) (observing that in the social security context, the threshold for "substantial evidence" is "not high").

Among Plaintiff's allegations is a complaint that the ALJ failed to discuss a treatment note that mentions joint pain. (ECF No. 18 at 9, citing AR 872.) An ALJ, however, is not required to discuss every piece of evidence in the record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("[t]he ALJ is not required to discuss evidence that is neither significant nor probative"); *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("the ALJ does not need to discuss every piece of evidence," and the "ALJ is not required to discuss evidence that is neither significant nor probative") (citation and quotation marks omitted). The record cited by Plaintiff is dated November 18, 2014, and includes the following notation: "Musculoskeletal: Positive for myalgias, back pain and joint pain." (AR 283.) Plaintiff does not point to any other medical evidence suggesting that his joint pain resulted in any additional functional limitations. Given the lack of probative value, the ALJ did not err by failing to address this evidence. *See generally Matthews v. Shalala*, 10 F.3d 678, 680

(9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.").

For the foregoing reasons, the ALJ's RFC assessment must be affirmed. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence.").

### III. The ALJ's credibility determination

Plaintiff appears to challenge the ALJ's credibility determination. (*See* ECF No. 18 at 9-10.) For the following reasons, such a challenge lacks merit.

#### A. Plaintiff's Testimony

Plaintiff alleged that he is unable to work due to neck pain resulting from an injury he sustained at work in September 2012. (AR 72, 260.) He testified that he had difficulty moving his neck and that the pain radiated to his arm and waist. (AR 73.) According to Plaintiff, as a result of his neck injury, he could lift only about three or four pounds with his right arm and up to 15 pounds with his left. Plaintiff opined that he could stand or walk for two hours at a time before needing to sit down and rest. He did not have difficulty sitting for prolonged periods. (AR 81-82.) Plaintiff also complained of dizziness and trouble walking due to hip pain. (AR 77, 80-81.)

Plaintiff testified that his treatment consisted of morphine for pain and heating pads. He explained that he had attended physical therapy, but never received epidural injections or other invasive treatment. (AR 73-75, 84-85.)

With regard to his daily activities, Plaintiff testified that he lives in a condominium with his wife, who is disabled. (AR 70.) Plaintiff's wife has a live-in aide who does the housework, goes to the market, and prepares meals for Plaintiff's wife. Plaintiff is able to take care of his own personal needs, do his own laundry, and his own cooking. Plaintiff takes the bus twice a week to see his son. Otherwise, Plaintiff spends most of his time laying down, watching TV and reading. (AR 77-78.)

**B. Relevant Law**

Where, as here, a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834) (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, although an ALJ may not disregard a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

**C. Analysis**

The ALJ found Plaintiff's subjective complaints of disabling pain and limitations to be less than fully credible. The ALJ provided the following reasons for

that determination: (1) Plaintiff's subjective complaints were inconsistent with the objective medical evidence; (2) Plaintiff's subjective complaints were undermined by the absence of treating source restrictions; (3) Plaintiff's vague testimony regarding his work activity since the alleged onset date diminished his credibility as a whole; and (4) Plaintiff's subjective complaints were inconsistent with his daily activities. (AR 56-57.)

    1. Inconsistent with Medical Record

The ALJ summarized Plaintiff's subjective complaints as well as the medical record before concluding that although Plaintiff's neck impairment resulted in some functional limitations, the objective evidence did not support the severity of Plaintiff's allegations. In particular, the ALJ noted that the objective medical records indicated that Plaintiff had not suffered significant neurological or mobility deficient as a result of his impairment. (AR 57.) As set forth in detail above, the objective medical evidence supported the ALJ's conclusion. Thus, the ALJ properly relied upon the absence of objective medical support as one factor in his decision to discount Plaintiff's subjective complaints of disabling pain and limitations. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse credibility determination).

    2. Lack of Support in Treating Physician Opinion

The ALJ stated that, in light of Plaintiff's allegations of totally disabling symptoms, it was reasonable to expect treatment notes would reflect restrictions on Plaintiff's function or activity. The ALJ found it significant that no treating source opined that Plaintiff's impairment caused restrictions. (AR 57.) Plaintiff does not dispute the ALJ's characterization of the record, and the Court's review indicates that it is accurate. Accordingly, the ALJ properly discounted Plaintiff's subjective complaints of disabling limitations based upon the absence of any treating source opinion supporting such limitations. *See e.g., Martin v. Berryhill*, 722 F. App'x 647,

649–650 (9th Cir. 2018) (ALJ properly discounted plaintiff's credibility based upon finding that no physician opinions corroborated the alleged severity of plaintiff's limitations).

3. Plaintiff's Testimony Regarding Work Activity After Alleged Onset Date

The ALJ found that Plaintiff's "vague testimony regarding his work activities since the alleged onset date also serves to diminish his credibility as a whole." (AR 57.) In particular, the ALJ noted that Plaintiff insisted that he was unable to return to work due to a work-related neck injury in September 2012. However, the record reflected work activity after the alleged onset date. (*See* AR 54, 239.) The ALJ explained that although the "work activity did not constitute disqualifying substantial gainful activity, it does indicate that [Plaintiff]'s level of functioning after the alleged onset date had been somewhat greater than [Plaintiff] had generally reported." (AR 56.)

An ALJ may rely upon evidence that a claimant actually worked during a period of claimed disability to support an adverse credibility determination. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming ALJ's credibility determination which was based in part on fact that claimant had recently performed work activity); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ properly relied on evidence that claimant continued to work after his date last insured). Moreover, although the ALJ may have drawn other inferences based upon the evidence, it was not improper for the ALJ to discount Plaintiff's credibility in light of the evidence that he was able to complete some work activity at a time when he was allegedly disabled. *See Orn*, 495 F.3d at 630 (where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld).

Furthermore, an ALJ may properly rely on a claimant's vague testimony to discount his credibility. *See generally Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding that "ordinary techniques of credibility evaluation" may be employed

by an ALJ in assessing a claimant's credibility).

While Plaintiff testified that he could not work after he injured his neck in September 2012, he also testified that he worked for two weeks at a warehouse in December 2012. Further, as the ALJ noted, in December 2012, Plaintiff reported to his physician that his symptoms had worsened in the prior month after Plaintiff "was lifting women at church who were fainting" and because he had worked for two weeks at a warehouse where he "had to lift very heavy bags/boxes." (AR 75, citing AR 359.) When the ALJ asked Plaintiff about the warehouse job, Plaintiff testified that it involved "just bread and flowers." (AR 75-76.) In light of the record, the ALJ properly relied upon Plaintiff's vague testimony regarding his work activity after the alleged onset date to discount his credibility. *See, e.g., Menchaca v. Colvin*, 2014 WL 185707, at *3 (C.D. Cal. Jan. 15, 2014) (ALJ properly relied on claimant's vague testimony to discount her credibility).

4. Daily Activities

The ALJ found that Plaintiff "remains capable of a broad range of activities of daily living that is inconsistent with disabling pain." (AR 57.) Generally, "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)).

Here, Plaintiff points out that the ALJ erroneously summarized some of his testimony regarding his daily activities. Notably, the ALJ stated that Plaintiff "confirmed he was able to take care of his wife and do household chores at home that included shopping for groceries...." (AR 56.) Contrary to the ALJ's decision, Plaintiff testified that his wife had a live-in caretaker, and the caretaker performed the grocery shopping. (AR 70, 77.) Nevertheless, assuming that the ALJ erred in relying on Plaintiff's daily activities in assessing his credibility, the error was harmless in light of the other legally sufficient reasons provided by the ALJ. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (where one or more reasons supporting ALJ's

credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008) (despite the invalidity of one or more of an ALJ's stated reasons for discounting a claimant's credibility, the court properly may uphold the ALJ's decision where the ALJ stated sufficient valid reasons).

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 12/4/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE